IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OPTIMAL GOLF SOLUTIONS, INC., GPS INDUSTRIES, INC. and OPTIMAL I.P. HOLDINGS, L.P., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:09-CV-1403-K |
| ALTEX CORPORATION, et al., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Optimal I.P. Holdings, L.P.'s ("Optimal Holdings") Brief on Patent Ownership and Renewed Motion to Lift Stay (Doc. No. 52). After careful review of the brief, the motion and responsive briefing, and the applicable law, the Court **DENIES** the motion and hereby **dismisses** the case **without prejudice** for the following reasons.

I.   **Factual and Procedural Background**

Plaintiffs Optimal Golf Solutions, Inc. ("OGSI"), GPS Industries, Inc. ("GPS"), and Optimal Holdings ("Optimal") filed this patent infringement lawsuit on July 29, 2009. Plaintiffs GPS and Optimal had previously filed a patent infringement lawsuit against the Defendants on May 11, 2007, Cause No. 3:07-CV-0831-K. That case was dismissed on July 27, 2009, for lack of subject matter jurisdiction when the Court ruled that GPS and

Optimal did not have standing to bring the suit. In the present suit, the patent at issue is United States Patent No. 5,364,093 ("the '093 Patent"), titled "Golf Distance Measuring System and Method". In their Original Complaint ("Complaint"), Plaintiffs allege Defendants Altex Corporation, Deca International Corporation, Golflogix, Inc., GPS Technologies, Inc., L1 Technologies, Inc., Links Point, Inc., Skyhawke Technologies, LLC, and Tee2Green Technologies, Pty, Ltd. (collectively "Defendants") made, used, imported, sold, and/or offered to sell products, including handheld and/or golf cart mounted golfing GPS devices, without authority and which infringe on the '093 Patent.

On August 14, 2009, Defendant SkyHawke Technologies, LLC ("SkyHawke"), filed an expedited motion to stay the case (Doc. No. 10). In support of its motion, SkyHawke cited Plaintiff GPS's bankruptcy petition filed on July 31, 2009, as reason for staying the case, as well as issues related to ownership of the '093 Patent. In an order dated August 18, 2009 (Doc. No. 17), the Court denied the motion without prejudice, and ordered the parties to file a joint report with the Court as to their respective positions regarding Plaintiff GPS's recent bankruptcy filing. After receiving the joint report, the Court stayed the case on September 30, 2009 (Doc. No. 24), concluding, among other things, the ownership of the '093 Patent was uncertain.

On December 11, 2012, Plaintiffs filed a motion to lift the stay (Doc. No. 27). On February 14, 2013 (Doc. No. 49), the Court lifted the stay for 60 days for the express purpose of taking discovery related to the issue of standing, specifically the ownership of the '093 Patent. The Court ordered all the parties to cooperate in this process, and

specifically warned the Plaintiffs that failure to do so would result in dismissal of the case. The Court further ordered that, at the end of the 60 days, the Plaintiffs must be able to clearly prove ownership of the '093 Patent to establish standing to bring this suit, otherwise the case would be dismissed.

On April 25, 2013, OGSI and GPS filed a notice of dismissal with prejudice of their claims against all Defendants (Doc. No. 50). That same day, Optimal dismissed without prejudice its claims against Defendants Altex Corporation, Links Point, Inc., Tee2Green Technologies Pty, Ltd, and GPS Technologies, Inc. (Doc. No. 51). This leaves Optimal's claims against four remaining Defendants–Deca International Corporation, Golflogix, Inc., L1 Technologies, Inc., and Skyhawke Technologies, LLC. On April 30, 2013, Plaintiff Optimal filed a brief on patent ownership and its renewed motion to lift the stay (Doc. No. 52). That renewed motion is currently before the Court.

II.     Analysis

Optimal asserts that GPS, as patentee, had standing to bring this suit when it was filed. Then, through various asset purchases and assignments, Optimal ultimately acquired all rights, title, and interest in the '093 Patent and now argues it has standing as the patentee to assert these claims against the remaining Defendants. The Court disagrees with Optimal for several reasons and finds that:

1.      Optimal did not have standing to sue at the inception of this case because:

    a.      it held no valid license in the '093 Patent, or, alternatively,

    b.      it failed to establish that it held an exclusive license in the '093 Patent,

vesting it with a legally protected interest in the patent; and

2. The Court lost jurisdiction due to a standing defect when a non-party acquired all substantial rights in the '093 Patent during the pendency of this case, and this defect could not be cured by an assignment to Optimal because it did not have standing at the inception of the case; and

3. GPS and OGSI, the other two Plaintiffs, did not participate in the jurisdictional discovery as ordered by the Court, despite the Court's warning that failure to do so would result in dismissal of the entire case.

A. **Standing to Sue**

Optimal states that when this case was filed, it "may have been an exclusive licensee" as to the '093 Patent in the Consumer Handheld Field. Optimal claims that, regardless, its status as a licensee (i.e., exclusive or nonexclusive) does not need to be determined by the Court because standing was satisfied at the inception of the lawsuit: either (1) GPS owned substantially all rights of the '093 Patent vesting it with standing to sue for alleged infringing activity or (2) GPS and Optimal collectively held all substantial rights of the '093 Patent and had standing to sue jointly.

Contrary to Optimal's argument, the Court must determine Optimal's licensee status related to the '093 Patent because that addresses the threshold issue of whether Optimal had standing to sue the Defendants when the case was filed. In a federal cause of action, a party's standing to sue is a threshold requirement which "must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 975

(Fed. Cir. 2005). The burden to establish standing is on the party bringing the lawsuit. *Id.* at 976. Under the Patent Act, the patentee has the right to sue for patent infringement. 35 U.S.C. § 281 (2001). The patentee includes the patent owner as well as the assignee of all substantial rights of the patent. *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *see* 35 U.S.C. § 100(d). In addition to the patent owner and assignee, an exclusive licensee may also have standing to sue because it is a party which can "'[have] a legally protected interest in the patent created by the Patent Act, so that it can be said to suffer legal injury from [the] act of infringement.'" *WiAV Solutions*, 631 F.3d at 1264 (quoting *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2005)); *see also Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). By contrast, it is well established that a nonexclusive licensee has "'no constitutional standing . . . to bring suit or even join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement.'" *Sicom Sys.*, 427 F.3d at 976. So, in addressing standing, the court looks to "whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Solutions*, 631 F.3d at 1265.

Optimal does not argue that it was the patentee or a licensee holding all substantial rights of the '093 Patent when the suit was brought on July 29, 2009. The record establishes that GPS was the patentee. Optimal claims that it "may have been an exclusive licensee" in the '093 Patent. In order to have had standing to join in this suit with GPS from the beginning, Optimal was requried to show that it was an exclusive licensee at the

time the suit was brought. *See Sicom Sys.*, 427 F.3d at 975-76 (burden to establish standing is on the party bringing the lawsuit); *see also WiAV Solutions*, 631 F.3d at 1265, fn. 1 ("An exclusive licensee generally must join the patent owner to the suit to satisfy prudential standing constraints."). In reviewing the arguments and evidence, the Court concludes that (1) Optimal did not hold a license to the '093 Patent at all, or, alternatively, even if it did, (2) Optimal failed to establish that it was an exclusive licensee and had "an exclusionary right" in the '093 Patent when the suit was filed so it could join GPS in the suit.

    **1.**    **License in the '093 Patent**

        <u>a.</u>    <u>No valid license granted</u>

GPS purportedly granted Optimal a license under the '093 Patent in the Replacement Patent License Agreement ("Agreement"). This Agreement reflects it was entered into on December 31, 2008, and signed and dated January 13, 2009. At the time of the Agreement, OGSI was "the sole and exclusive owner of [the '093 Patent]," as evidenced by the Agreement itself. Pl.'s App. on Patent Ownership, p. 014. Also at that time, OGSI, as a wholly owned subsidiary, was a separate entity from GPS; it did not merge into GPS until July 1, 2009. As this Court already determined in the prior infringement case, "[m]erely because OGSI is a wholly owned subsidiary of GPS does not in and of itself confer all substantial rights of the '093 patent on GPS." *See also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the

subsidiary.") Optimal presents no evidence that, at any time prior to the Agreement, OGSI assigned in writing all substantial rights of the '093 Patent to GPS. On the contrary, the record establishes that GPS was not the patentee until July 1, 2009 when OGSI merged with it. The Agreement reflects it was GPS, not OGSI as the patentee, that attempted to grant Optimal a license under the '093 Patent.

This license, had it been valid, would have been the only arguable basis supporting Optimal's standing to join GPS at the inception of the suit against Defendants. *See also WiAV Solutions*, 631 F.3d at 1265 (if not the patentee, a party must establish "that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury."); *Enzo*, 134 F.3d at 1093 ("We have accorded standing, in limited circumstances, where all substantial rights under the patent have been transferred in the form of an exclusive license."). The Court concludes that any license GPS attempted to grant to Optimal in this Agreement, if not the entire Agreement itself, is void *ab initio* as GPS never had the legal right to do so. *See Dole Food Co.*, 538 U.S. at 475 (corporate parent does not "own or have legal title to the assets" of its subsidiary merely because it owns the shares of the subsidiary). Without any license Optimal could not have suffered a legal injury from any infringing action. *See also Sicom Sys.*, 427 F.3d at 976.

b.  Nonexclusive License

Even if the Court found the license had been properly granted, Optimal's evidence does not establish that it was an exclusive licensee or that it had any exclusionary rights

in the license, which is essential for standing. *See WiAV Solutions*, 631 F.3d at 1265 (if not the patentee, a party must establish "that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury."); *Enzo*, 134 F.3d at 1093 ("We have accorded standing, in limited circumstances, where all substantial rights under the patent have been transferred in the form of an exclusive license."). In its brief to the Court, Optimal states that it "may have been an exclusive licensee" under the '093 Patent, and cites the Court to the following sections of the Agreement:

> 2.1 GPSI grants to Optimal a perpetual, non-terminable, royalty-free, exclusive (except as to [GPS]) license under the Licensed Patent ['093] in the Consumer Handheld Field . . . .
> . . . .
> 2.4 Additionally, GPSI grants to Optimal a perpetual, non-terminable, royalty-free, exclusive (except as to[ GPS]) license under the License Patent ['093] to develop, make, and have made up to 100 Tournament Devices .
> . . .

Pl.'s App. on Patent Ownership, p. 017(emphasis added). Optimal does not explain how this grant was an exclusive license or gave it any exclusionary rights. Outside of this citation to the record, Optimal offers no other evidence that it was an exclusive licensee or had any exclusionary rights under the '093 Patent to exclude these Defendants from their alleged infringing activities which allegedly caused injury to Optimal. In reviewing the Agreement, the Court found that GPSI retained the right to sublicense the '093 Patent, including to end users, as it relates to "Hardware/Software Products" and then "Software Only Products." *Id.* at ¶ 2.5. As the Court previously noted, a nonexclusive

licensee can suffer no legal injury and, therefore, has no constitutional standing "to bring suit or *even join a suit with the patentee*." *See Sicom Sys.*, 427 F.3d at 976 (emphasis added). Even if GPS had legally granted Optimal a license, Optimal failed to establish that it had the necessary exclusionary rights in this license to vest it with standing to join this suit at its inception. *See id.*

Optimal's argument that, at a minimum, standing was satisfied because the patentee GPS jointly sued is without merit. Optimal must also have had standing to sue, and the presence of GPS, the patentee, cannot cure that. *See also id.* at 975 (nonexclusive licensee can suffer no legal injury and, therefore, has no constitutional standing "to bring suit or even join a suit with the patentee.").

In conclusion, the Court finds Optimal did not meet its burden to establish that, at the inception of the suit, it had standing to sue or to join the suit as a plaintiff. *See id.* First, the record establishes that Optimal did not have a license in the '093 Patent because GPS did not have the legal right to grant Optimal any license. But, even if the license had been properly granted, Optimal failed to show that it had the necessary exclusionary rights in its license to support standing to sue. Optimal was not a proper plaintiff at the inception of the suit and, therefore, its claims are dismissed. *See id.* at 975-76 (party's standing to sue is a threshold requirement which "must be present at the time the suit is brought," and the burden to establish standing is on the party bringing the lawsuit.).

### 2. Assignment of '093 Patent

Optimal argues that any standing deficiencies the Court might have found were

cured when it became the patentee because now it is the proper plaintiff to continue this suit against the Defendants. Optimal contends it acquired all rights and interest in the '093 Patent through an Assignment of Patents Agreement ("Assignment") from third party, GPS Industries, LLC, which had purchased all the assets, including the '093 Patent, of GPS, the patentee. Optimal goes on to argue that any temporary jurisdictional defect which resulted from a non-party, GPS Industries, LLC, holding all substantial rights in the '093 Patent, rather than a named plaintiff, was cured when GPS Industries, LLC assigned the '093 Patent to Optimal during the pendency of the case. For the following reasons, Optimal's argument fails.

The record establishes GPS was the patentee at the time the suit was filed on July 29, 2009, after GPS's merger with OGSI, the previous patentee. Therefore, GPS had constitutional standing to bring this suit. Although GPS may have had standing to bring the suit, the Court has already concluded Optimal did not have standing at the inception of the case to join GPS as a plaintiff. On July 31, 2009, two days after this suit was filed, GPS filed a voluntary bankruptcy petition. The bankruptcy plan ultimately called for substantially all of the assets of GPS to be sold, including the '093 Patent. A bid for these assets was submitted on behalf of non-party GPS Industries, LLC, and was eventually accepted. The Asset Purchase and Sale Agreement between GPS and GPS Industries, LLC, was dated September 24, 2009. Upon the asset purchase and while this case was active, GPS Industries, LLC, a non-party, was the sole owner of the '093 Patent. As the patentee, GPS Industries, LLC, had standing to prosecute these claims against Defendants; but

-10-

Optimal still had no standing. At this point, the Court lost jurisdiction. Optimal argues this was cured when GPS Industries, LLC, assigned the ' 093 Patent to Optimal on February 12, 2012.

In support of its argument, Optimal cites the Court to *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) for the premise that a court's loss of jurisdiction due to a standing defect may be cured. The *Schreiber* case can easily be distinguished from this case, and Optimal itself inadvertently acknowledges this. The Federal Circuit in *Schreiber* held that a court may regain jurisdiction after temporarily losing it due to lack of standing <u>if the plaintiff had constitutional standing at the inception of the suit</u> and there is a way to cure the deficiency. *Id.* at 1200-04 (emphasis added). That is simply not the situation in this case. The Court has already determined that Optimal did not have standing at the inception of the suit; so the Court's loss of jurisdiction when the '093 Patent was sold to non-party GPS Industries, LLC, could not be cured when Optimal later purportedly acquired all rights and interests in the '093 Patent. Applying the holding in *Schreiber*, Plaintiff GPS would have had to regain all rights and interest in the '093 Patent to cure this jurisdictional defect because it alone had standing at the inception of the suit.

What Optimal essentially asks the Court to do is to recognize a *nunc pro tunc* assignment, which would confer standing on Optimal to continue this suit against Defendants, even though Optimal did not have standing when the suit was filed. This Court addressed *nunc pro tunc* assignments in the prior litigation, citing the Federal Circuit

holding in *Enzo* that *nunc pro tunc* assignments are insufficient to confer retroactive standing. The Federal Circuit cited well-reasoned policy grounds for its conclusion:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

*Enzo*, 134 F.3d at 1093-94 (quoting *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 310 (D. Del. 1995)). These reasons are equally applicable in this case as well. Optimal should have possessed the necessary rights under the '093 Patent before seeking to have them vindicated against the Defendants in this Court. It did not; instead, it seems apparent to the Court that Plaintiffs GPS, OGSI, and Optimal rushed to file this suit without first determining who was the proper party to bring it. To permit Optimal to proceed in prosecuting this case when it had no rights at the outset would run afoul of the judicial system and process. The Court was divested of jurisdiction when non-party GPS Industries, LLC, acquired all rights and interest in the '093 Patent, and this cannot be cured based on the record before the Court.

Even if the Court were to find the Assignment of the '093 Patent from GPS Industries, LLC, to Optimal, cured the standing defect, problems with the Assignment would abound. The record before the Court is completely unclear as to whether this

Assignment was even valid and whether, more specifically, Optimal indeed holds all substantial rights and interest in the '093 Patent.  The record reveals that after acquiring Plaintiff GPS's assets, non-party GPS Industries, LLC, granted a security interest in those assets, including the '093 Patent, to another non-party, LV Administrative Services, Inc. ("LV").  This lien was recorded with the U.S. Patent and Trademark Office on November 6, 2009, and the lien was released on December 19, 2012.  GPS Industries, LLC, entered into the Assignment of the '093 Patent with Optimal on February 12, 2012, more than nine months before the lien was released.  There is no explanation as to how, or if, LV's lien or status as assignee affected the right or ability of non-party GPS Industries, LLC, to assign all rights, title, and interest in the '093 Patent to Optimal, thereby throwing the validity or legality of that assignment into question.

The Court concludes that it lost jurisdiction due to a standing defect when the assets of GPS, which included the '093 Patent, were sold to non-party GPS Industries, LLC.  This standing defect could not be cured by an assignment of the rights and interest in the '093 Patent from GPS Industries, LLC, to Optimal, because it never had standing to join in this suit at the inception.  Furthermore, the record is unclear as to whether this Assignment to Optimal was even valid in light of the lien assigned to non-party LV.  The Federal Circuit has held that "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that if violated by another would cause the party holding the exclusionary right to suffer legal injury."  *WiAv*, 631 F.3d at 1265.  To date, Optimal still cannot make this

showing.

This is now the second case involving the same patent and same Plaintiff where the Court found Optimal had no standing to bring this suit. The procedural history of this case paints the picture that Optimal, along with the other Plaintiffs GPS and OGSI, hastily filed this second suit before determining who would be the proper plaintiff(s) to prosecute it. The Plaintiffs in both cases appear to have given no thought to actual ownership of the '093 Patent until <u>years</u> into litigation. This has been incredibly frustrating to the Court, and surely to the parties defending these suits. Two cases now have been dismissed for jurisdictional issues related solely to standing and it has been a waste of judicial resources, as well as those of the Defendants. The Court warns that any future jurisdictional defects involving standing related to this patent and these plaintiffs will likely result in sanctions.

### B. Failure to Participate in Court Ordered Discovery

On December 11, 2012, a motion to lift the stay (Doc. No. 27) was filed on behalf of all three Plaintiffs. The next day, on December 12, 2012, Plaintiffs' counsel filed Notices of Appearance on behalf of all three Plaintiffs. *See* Doc. Nos. 29, 30, & 31. After Defendants filed their response to the motion, the Court issued an order (Doc. No. 49) on Plaintiffs' motion to lift stay, lifting the stay for 60 days "only for the express and limited purpose of taking discovery related to the threshold issue of standing." In the order, the Court chastised Plaintiffs for their "lack of clarity on and depth of argument about the crucial issue" of ownership of the '093 Patent. The Court concluded by ordering both sides to cooperate in the limited discovery, specifically warning "**[i]f Plaintiffs fail**

**to cooperate in this process, the Court will dismiss this case.**" Doc. No. 49 at p. 3 (emphasis in the original).

The record before the Court establishes that Plaintiffs GPS and OGSI did not participate in discovery. Only Optimal responded to the discovery requests served by Defendants. In fact, Optimal responded to one particular interrogatory that Plaintiffs' counsel no longer represented GPS, even though just three months earlier counsel filed a Notice of Appearance on behalf of all three Plaintiffs. *See* Defs. App. (Doc. No. 56) at p. 50. Interestingly, after the close of the limited discovery period, Optimal supplemented its response to its earlier answer and stated that counsel did indeed still represent GPS and had from the inception of the suit. *See id.* at p. 74. Despite discovery served on GPS and OGSI, neither participated, let alone responded. Defendants argue this failure alone, in light of the Court's order, supports dismissal of the entire case.

In its reply, Plaintiff Optimal focuses on the "voluminous nature of Defendants' requests" and the efforts undertaken by Optimal to comply. Reference to GPS and OGSI in connection to the discovery is limited to two sentences. Optimal claims that GPS and OGSI dismissed all their claims "because neither entity currently has any interest in the '093 patent and, thus, lacks standing to participate in this suit." Optimal then states that OGSI "no longer exists" and GPS "is in the process of being wound down by a bankruptcy trustee."

The Court is completely unpersuaded by Optimal's inadequate reasoning. Despite the Court's clear warning that all Plaintiffs participate in discovery or risk dismissal of their

claims, Plaintiffs OGSI and GPS did not participate, even though each, at one point in time, held all substantial rights in the '093 Patent.  Furthermore, counsel for GPS and OGSI never communicated to the Court any reason why each or both could not participate in the discovery, nor did counsel move for the Court to excuse them from the Court ordered requirement to participate or for any other relief.  Finally, GPS and OGSI did not file their notice of dismissal of all their claims against the remaining Defendants until April 25, 2013, almost two weeks after the close of the limited 60-day discovery period; a fact Optimal glosses over in its reply to Defendants' argument.  The Court finds this behavior consistent with the pattern of behavior exhibited by the Plaintiffs and their counsel throughout this case as well as its predecessor.  The Court, therefore, concludes that, alternatively, the case should be dismissed entirely for the failure of GPS and OGSI to follow the Court's order to participate in discovery.

### III. Conclusion

For the foregoing reasons, the Court finds Optimal did not have standing to sue or join suit against these Defendants at the inception of the case. Furthermore, this Court lost jurisdiction due to a standing defect when a non-party acquired the '093 Patent and this defect could not be cured by an assignment, if it was even valid, to Optimal. Finally, GPS and OGSI did not participate in Court ordered discovery despite the Court's express warning that such a failure would result in dismissal. Therefore, the Court **denies** the motion to lift the stay and, for the foregoing reasons, this case is **dismissed without prejudice**.

**SO ORDERED.**

Signed January 7th, 2015.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE